IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| **CHRISTOPHER WITHERS,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 6:20cv65 |
| | ) |
| **SAM GREEN, et al.** | ) |
| | ) |
| Defendants. | ) |
| | ) |

### MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendants, Sam Green ("Green") and Dwayne Wade ("Wade") (collectively "Defendants"), by counsel, submit this Memorandum in Support of their Motion for Summary Judgment. For the reasons that follow, no reasonable juror could find in favor of the plaintiff and there is no genuine dispute regarding any material fact. Accordingly, summary judgment must be granted in favor of the Defendants.

### STATEMENT OF THE CASE

In this case, plaintiff Christopher Withers ("Withers") claims Defendants, deputies of the Campbell County Sheriff's Office, used excessive force during a vehicle stop on September 29, 2018. Video from Green's vehicle's dash camera demonstrates that it is undisputed that Withers failed to stop after Green approached Withers' vehicle with his emergency lights and siren activated. Indeed, Withers continued driving for approximately four minutes while passing more than thirty areas suitable for pulling over his vehicle and ignoring other law enforcement officers' signals to stop. Withers finally stopped his vehicle only because he could not get past a firetruck headed in the opposite direction. While Withers claims that Defendants beat him after removing him from his



FRITH ANDERSON +PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0406\NHS
4890-9627-1872 .v1

- 1 -

vehicle, the Defendants and two eyewitnesses utterly refute that account. As such, Withers cannot establish a genuine dispute of material fact, and summary judgment is warranted in this action.

### STATEMENT OF UNDISPUTED *MATERIAL* FACTS

1. On the evening of September 29, 2018, Withers left work at Macado's in Lynchburg, Virginia and started to drive home. **Ex. 1**, Withers Dep., 18:2–15 (Oct. 15, 2021).

2. Withers decided to go up Liberty Mountain in order to avoid traffic. Id., 18:11–15.

3. Withers resided on Bright Side Drive in Lynchburg at the time. Id., 6:23–7:1.

4. That same evening, Green received a call to respond to an incident involving a vehicle that had collided into a house on Chinook Drive in Lynchburg. **Ex. 2**, Green Decl., *1; **Ex. 2**, *Attachment A* at 02:00–02:30; **Ex. 2**, *Attachment B* at 0:00–01:25.

5. Green was on U.S. 460 travelling eastbound near the Airport Road exit when he received the call. Id.; **Ex. 2**, *Attachment A* at 02:00–02:30.

6. Green activated his emergency lights and siren and began proceeding to the scene of the accident. Id.; **Ex. 2**, *Attachment A* at 02:30–2:40.

7. Green exited U.S. 460 East via the Candlers Mountain Road exit. Id.; **Ex. 2**, *Attachment A* at 05:00–05:10.

8. Green turned left on to Candlers Mountain Road and then proceeded to turn left on to Camp Hydaway Road. When he turned on Camp Hydaway Road, Green's emergency lights were activated, but his siren was not. Id., at *2; **Ex. 2**, *Attachment A* at 08:32–08:40.

9. Shortly after turning on Camp Hydaway Road, Green encountered a Toyota four-door sedan driven by Withers. Id.; **Ex. 2**, *Attachment A* at 09:00–09:10.


FRITH ANDERSON + PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

10. As Green drew closer to Withers' vehicle, Green reactivated his emergency siren. Id.; **Ex. 2**, *Attachment A* at 9:00–9:29; **Ex. 1**, 19:3–7.

11. Withers did attempt to pull over or even slow down at any time. Id.; **Ex. 2**, *Attachment A* at 9:00–13:30; **Ex. 2**, *Attachment B* at 02:34–02:48, 02:59–03:10.

12. After travelling down Camp Hydaway Road for a mile to a mile and a half, Wade advised Green that Green could cut back his response to the vehicle crash as a Virginia State Police officer had arrived at the scene with Wade. Id.; **Ex. 2**, *Attachment A*, 11:00–11:10; **Ex. 2**, *Attachment B*, 02:50–02:58.

13. Green decided to execute a traffic stop of Withers' vehicle for failure to yield to an emergency vehicle. Id.; **Ex. 2**, *Attachment A*, 11:05–11:25; **Ex. 2**, *Attachment B*, 02:58–03:10.

14. Withers drove for approximately 3 miles on Camp Hydaway Road without attempting to pull over or slow down despite Green having his emergency lights and siren activated the entire time. Id.; **Ex. 2**, *Attachment A*, 09:00–12:45.

15. As Withers approached the intersection of Chinook Drive and Camp Hydaway Road and Old Rustburg Road, Withers activated his right turn signal. Id.; **Ex. 2**, *Attachment A*, 12:31; **Ex. 2**, *Attachment B*, 03:42–03:46; **Ex. 2**, *Attachment C*.

16. As Withers approached the intersection, other emergency vehicles with emergency lights activated were in clear view. Id.; **Ex. 2**, *Attachment A*, 12:42–12:47.

17. Before Withers turned right on Old Rustburg Road, Wade and the Virginia State Police officer attempted to stop Withers by signaling with their flashlights and yelling for him to stop. Id.; **Ex. 2**, *Attachment A*, 12:45–12:47; **Ex. 3**, Wade Declaration, *2.



- 3 -

629.0406\NHS
4890-9627-1872 .v1

18. Withers did not stop and proceeded to turn right on to Old Rustburg Road without making any attempt to pull over. Id., *2–3; **Ex. 2**, *Attachment A*, 12:45–12:56; **Ex. 1**, 19:14–25.

19. Green observed Withers' hand out of the driver's side window, and it appeared to Green that Withers was dropping or throwing something out of his vehicle. Id., *3; **Ex. 2**, *Attachment A*, 13:14–13:21; **Ex. 2**, *Attachment B*, 04:28–04:33.

20. At the same time, other emergency vehicles were on Old Rustburg Road and headed in the direction of Withers and Green toward the vehicle accident on Chinook Drive. Id.; **Ex. 2**, *Attachment A*, 13:13–13:35; **Ex. 4**, Isaiah Engel Declaration, *1; **Ex. 5**, Eric Spitzer Declaration, *1.

21. Withers finally came to a stop just before where Lone Jack Road meets Old Rustburg Road because he could not get past one of the emergency vehicles, which was a firetruck. Id.; **Ex. 2**, *Attachment A*, 13:35; **Ex. 2**, *Attachment B*, 05:25–05:30; **Ex. 2**, *Attachment C*; **Ex. 4**, *1; **Ex. 5**, *1; **Ex. 1**, 20:1–4.

22. Once Withers came to a stop, Green stopped his vehicle, exited it, and approached Withers' vehicle yelling for the driver to show his hands. Id.; **Ex. 2**, *Attachment A*, 13:37–13:43.

23. As Green approached the vehicle, he could not see Withers' right hand, and it appeared to Green that Withers was reaching for something toward the back of the console or back floorboard area. Id.; **Ex. 2**, *Attachment A*, 13:43.

24. Green was concerned for his safety and the fire crew's safety because Withers had already failed to stop or yield to Green, and now Green did not know what Withers may be trying to do with his right hand. Id.



- 4 -

629.0406\NHS
4890-9627-1872 .v1

25. Green opened the driver's door and grabbed Withers' arm, but Withers continued pulling back towards the interior of the car. Id., *4; **Ex. 2**, *Attachment A*, 13:45–13:50.

26. Green used an "elbow to the sky" control hold to get Withers out of the vehicle. Id.; **Ex. 2**, *Attachment A*, 13:45–13:50.

27. Wade grabbed Withers' other arm in an attempt to take Withers down to the ground outside of the vehicle, but Withers' momentum kept the three individuals moving toward the side of the road. Id., *4; **Ex. 2**, *Attachment A*, 13:47–13:50; **Ex. 3**, *2–3.

28. As the three continued toward the side of the road, Wade was able to take Withers down to the ground using an arm bar takedown into a rough-cut grassy area. Id.; **Ex. 3**, *3.

29. A Rustburg firefighter, Isaiah Engel, followed the three men as they went off the side of the road. **Ex. 2**, *Attachment A*, 13:48–13:55; **Ex. 4**, *2; **Ex. 4**, *Attachment A*.

30. Once on the ground, Withers continued to be noncompliant and pulled his knees upward toward his stomach and tried to pull away and roll away from Green and Wade. **Ex. 2**, *4; **Ex. 3**, *3.

31. Eventually, the deputies were able to place Withers in handcuffs. Id.; **Ex. 3**, *3.

32. Engel was steps away from the officers during this interaction. **Ex. 4**, *2.

33. Another Rustburg firefighter, Eric Spitzer, observed the officers on the ground trying to handcuff Withers. **Ex. 5**, *2.

34. At no time did Green punch, kick, elbow, knee, or otherwise abuse Withers. **Ex. 2**, *4–5; **Ex. 4**, *2; **Ex. 5**, *2.

35. At no time did Wade punch, kick, elbow, knee, or otherwise abuse Withers. **Ex. 3**, *3; **Ex. 4**, *2; **Ex. 5**, *2.



FRITH ANDERSON +PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0406\NHS
4890-9627-1872 .v1

36. After the officers brought Withers up to his feet, they noticed blood on Withers' face and asked the EMTs on scene to check on Withers. **Ex. 2**, *5; **Ex. 2**, *Attachment A*, 15:30–15:35; **Ex. 3**, *3.

37. The EMT cleaned the blood off of Withers' face and evaluated him. **Ex. 2**, *Attachment A*, 16:00–17:30; **Ex. 6**, DEF000467–468.

38. After Withers was released from custody, he went to Lynchburg General Hospital where a forensic nurse examiner ("FNE") examined him. **Ex. 1**, 35:8–25.

39. The FNE took photographs of Withers' body. Id.; **Ex. 7**, DEF000487–529.

40. Other than superficial injuries to Withers' face, there are no visible bruises or other marks on Withers' arms, chest, or back from the alleged punches from Green and Wade. **Ex. 7**.

<u>**ARGUMENT & AUTHORITY**</u>

### I. <u>Standard of Review</u>

Federal Rule of Civil Procedure 56(a) requires the court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Glynn v. EDO Corp.</u>, 710 F.3d 209, 213 (4th Cir. 2013). The court may consider "the pleadings . . . [and any] affidavits" filed by the parties. <u>Celotex</u>, 477 U.S. at 322. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). The relevant substantive law determines whether a fact is "material." <u>Id.</u>



On a motion for summary judgment, the facts and all reasonable inferences drawn therefrom must be viewed by the court in the light most favorable to the non-moving party. Glynn, 710 F.3d at 213 (citing Bonds v. Leavitt, 629 F.3d 369, 380 (4th Cir. 2011)). Nor may the court invade the province of the jury by making "[c]redibility determinations," weighing the evidence, or "drawing . . . legitimate inferences from the facts . . . ." Anderson, 477 U.S. at 255.

But the non-moving party "must set forth specific facts that go beyond the 'mere existence of a scintilla of evidence'" and "cannot solely rely on 'mere allegations or denials of his pleadings.'" Glynn, 710 F.3d at 213 (quoting Anderson, 477 U.S. at 252; Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247–48. "The disputed facts must be material to an issue necessary for the proper resolution of the case, and the quality and quantity of the evidence offered to create a question of fact must be adequate . . . ." Thompson Everett, Inc. v. Nat'l Cable Adver., 57 F.3d 1317, 1323 (4th Cir. 1995) (citing Anderson, 477 U.S. at 252).



The existence of a mere scintilla of evidence in support of the nonmoving party as well as conclusory allegations or denials, without more, is insufficient to withstand a summary judgment motion. Tom v. Hosp. Ventures LLC, 980 F.3d 1027, 1037 (4th Cir. 2020). "[T]here must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.'" Holland v. Wash. Homes, Inc., 487 F.3d

208, 213 (4th Cir. 2007) (citing Anderson, 477 U.S. at 249–50). Nor will the non-moving party's beliefs, conjecture, speculation, or conclusory allegations suffice. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874–75 (4th Cir. 1992). Rather, the non-moving party must present "'sufficient evidence favoring [him] for a jury to return a verdict for [him].'" Res. Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 635 (4th Cir. 2005) (quoting Anderson, 477 U.S. at 249).

## II. Neither Defendant Used Excessive Force

The Fourth Amendment prohibits law enforcement from using excessive force in the course of making an arrest. Graham v. Connor, 490 U.S. 386, 395 (1989). Whether the force used during an arrest was excessive turns on an "objective reasonableness" standard. Wilson v. Prince George's Cnty., 893 F.3d 213, 219 (4th Cir. June 18, 2018). Under this standard, the Court must consider "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether the suspect is actively resisting arrest or attempting to evade arrest by flight." Id., at 220.

Whether the officer's actions are reasonable must be viewed "in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation." Graham, 490 U.S. at 397. In other words, "the Court must determine 'whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force[.]" Smith v. Centra Health, Inc., No. 6:20cv16, 2021 U.S. Dist. LEXIS 63080, at *29 (W.D. Va. Mar. 31, 2021) (quoting Elliott v. Leavitt, 99 F.3d 640, 642 (4th Cir. 1996)). In recognition of the fact that "officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly



evolving," Graham, 490 U.S. at 397, the officer's actions are not judged with the benefit of 20/20 hindsight or armchair reflection. Cnty. of Los Angeles v. Mendez, 137 S. Ct. 1539, 1546 (2017); Elliott v. Leavitt, 99 F.3d 640, 642 (4th Cir. 1996).

    **a. There is no "genuine" dispute of fact as to the extent of the officers' use of force.**

Withers does not contend that his extraction from the vehicle constituted excessive force. In his Complaint, Withers alleges Defendants "acted with actual malice and deliberate indifference to WITHERS' rights when they *beat and injured* him." ECF No. 1, ¶ 20 (emphasis added). Withers further alleges Defendants violated Withers' Fourth and Fourteenth Amendment rights "when they used unreasonable and excessive force against him *after removing him from the vehicle*." Id., ¶¶ 21–22 (emphasis added).

Defendants anticipate that plaintiff will claim a dispute of fact exists as to whether the officers' punched, elbowed, or otherwise abused him during the course of the arrest. But that dispute is based *solely* on Withers' account of the incident. But there is *no* other evidence—either direct or circumstantial—to corroborate his claim. While self-serving, uncorroborated testimony of a non-movant may be evidence of a disputed fact, the non-movant must still produce "enough evidence to demonstrate that dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Lovett v. Cracker Barrel Old Country Store, Inc., 700 F. App'x 209, 212 (4th Cir. 2017) (internal quotations omitted). In the absence of corroborating evidence, however, a plaintiff's self-serving testimony "is insufficient to allow him to defeat summary judgment." Boyd v. Tesemma, No. 2:14cv196, 2016 U.S. Dist. LEXIS 183666, at *18 (E.D. Va. Apr. 26, 2016) (citing Evans v. Technologies, Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1986)); Jeandron v. Bd. of Regents of the Univ. Sys. Of Md.,


FRITH ANDERSON +PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

- 9 -

510 F. App'x 223, 228 (4th Cir. 2013) (citing <u>Nat'l Enterprises, Inc. v. Barnes</u>, 201 F.3d 331, 335 (4th Cir. 2000)).

This is not a case of "he said, she said" wherein the defendants and the plaintiff are the only witnesses to the incident and proffer different versions of how the events unfolded. Rather, in addition to the Defendants' testimony, two nonparty eyewitnesses corroborated Defendants' accounts and flatly repudiate Withers' version. Photographs of Withers' body taken shortly after the incident do not show any visible marks or bruises on his body in the areas Withers claims Defendants hit him. <u>Compare</u> **Ex. 7** <u>with</u> **Ex. 1**, 20:23–21:10, 22:6–15. Withers also claimed there was no one else around at the time Defendants beat him, but that is belied by the video and Isaiah Engel's Declaration. <u>Compare</u> **Ex. 2**, ***Attachment A***, 13:48–13:55; **Ex. 4** <u>with</u> **Ex. 1**, 22:16–23:23. Withers also denied that the EMTs cleaned the blood off his face, but again that is belied by the video evidence. <u>Compare</u> **Ex. 2**, ***Attachment A***, 16:00–17:30 <u>with</u> **Ex. 1**, 26:2–4. Thus, this is a case in which the evidence "is so one-sided that one party must prevail as a matter of law." <u>Anderson</u>, 477 U.S. at 251–52. Indeed, "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007).

Here, the video footage clearly depicts Isaiah Engel following Withers, Green, and Wade as they step out of the camera's view. Engel submitted his sworn statement confirming that he did not see Wade or Green punch Withers at any time while they attempted to put Withers in handcuffs. Another eyewitness, Eric Spitzer, did not see Green or Wade punch Withers at any time either. The photos from the FNE examination



- 10 -

do not substantiate Withers' claims as there are no marks on his body other than the superficial injuries on his face consisting of the tiny abrasion to Withers' eyelid, subconjunctival hemorrhage in his right eye,[1] and scratch on the bridge of his nose. These facts beg the question: how can the Court draw a *reasonable* inference in Withers' favor in the face of Defendants' evidence and no evidence corroborating Withers' allegations? No reasonable juror would draw such an inference and summary judgment is appropriate in this case as to the excessive force claim.

### III. No Excessive Force Means No Gross Negligence

First, Defendants are entitled to state sovereign immunity for claims of ordinary negligence. Messina v. Burden, 228 Va. 301, 321 S.E.2d 657 (1984); Estate of Harvey v. Roanoke City Sheriff's Office, 585 F. Supp. 2d 844, 864 (W.D. Va. 2008) (citations omitted). Thus, if no claim for gross negligence lies against Defendants, any ordinary negligence claim against them fails as a matter of law.

Courts generally agree that "a favorable ruling for the defendant on an excessive force claim brought under § 1983 requires dismissal of the state law claims as well." Russell ex rel. Russell v. Wright, 916 F. Supp. 2d 629, 645 (W.D. Va. 2013); see Sigman v. Town of Chapel Hill, 161 F.3d 782, 789 (4th Cir. 1998); Thompson v. City of Danville, No. 4:10cv00012, 2011 WL 2174536, 2011 U.S. Dist. LEXIS 59698, *9 (W.D. Va. June 3, 2011); see also Rowland v. Perry, 41 F.3d 167, 174 (4th Cir. 1994) (parallel state law claims are "subsumed" within excessive force claims). This is true because, as a matter of

---

[1] According to the American Academy of Ophthalmology, subconjunctival hemorrhages are commonly caused by coughing, sneezing, and straining. What is a Subconjunctival Hemorrhage, American Academy of Ophthalmology, May 27, 2021, https://www.aao.org/eye-health/diseases/what-is-subconjunctival-hemorrhage; see also Subconjunctival Hemorrhage (broken blood vessel in eye), Mayo Clinic, Sept. 21, 2021 (https://www.mayoclinic.org/diseases-conditions/subconjunctival-hemorrhage/symptoms-causes/syc-20353826).

629.0406\NHS
4890-9627-1872 .v1

law, when an officer's actions are "reasonable in the circumstances of [the] case, they cannot be negligent or wrongful . . . ." Sigman, 161 F.3d at 789. Thus, the survival of Withers' gross negligence claim is necessarily wed to his excessive force claim. See Cooper v. Sheehan, 735 F.3d 153, 160 (4th Cir. 2013). Indeed, under Virginia law "an officer who in good faith believed that his actions were factually and legally sound . . . [is] entitled to absolute 'good faith' immunity from a civil suit . . . ." DeChene v. Smallwood, 226 Va. 475, 311 S.E.2d 749, 751–52 (1984). "Therefore, an officer can 'not be subjected to civil liability when the officer acted in good faith and with probable cause.'" Bethea v. Howser, 447 F. Supp. 3d 497, 516 (E.D. Va. 2020) (quoting Harrison v. Deane, 426 F. App'x 175, 181 (4th Cir. 2011) (unpublished)).

### IV. **Neither Defendant Was Grossly Negligent as a Matter of Law**

Even if the Court must independently assess the gross negligence claim despite the failings of the excessive force claim, the gross negligence claim against both Defendants fails as a matter of law.

Under Virginia law, "gross negligence is that degree of negligence which shows indifference to others as constitutes an utter disregard of prudence amounting to a complete neglect of the safety of another. It must be such a degree of negligence as would shock fair minded men although something less than willful recklessness." Griffin v. Shively, 227 Va. 317, 320, 315 S.E.2d 210, 212 (1984) (internal quotations omitted). Plaintiffs face a steep hurdle when claiming a defendant's actions amounted to gross negligence. See Doe v. Russell Cnty. Sch. Bd., 292 F. Supp. 3d 690, 716 (W.D. Va. 2018) ("[T]he standard for gross negligence is very high.").



FRITH ANDERSON +PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

- 12 -

629.0406\NHS
4890-9627-1872 .v1

"[G]ross negligence is the 'absence of slight diligence, or the want of even scant care.'" Colby v. Boyden, 241 Va. 125, 132, 400 S.E.2d 184, 188 (1991) (quoting Frazier v. City of Norfolk, 234 Va. 388, 393, 362 S.E.2d 688, 691 (1987)). It does not arise from "lack of attention and diligence, or mere inadvertence . . . ." Finney v. Finney, 203 Va. 530, 531, 125 S.E.2d 191 (1962). While gross negligence is "something less than . . . willful, wanton, and reckless conduct," the defendant's acts must clearly amount to a "heedless and palpable violation of legal duty respecting the rights of others . . . ." Elliott v. Carter, 292 Va. 618, 622, 791 S.E.2d 730, 732 (2016) (quoting Chapman v. City of Virginia Beach, 252 Va. 186, 190, 475 S.E.2d 798, 800-01 (1996)). If the defendant exercised some degree of diligence or care, however, a gross negligence claim must fail as a matter of law. Elliott, 292 Va. at 622-23, 791 S.E.2d at 732-33.

The United States District Court for the Eastern District of Virginia granted a motion to dismiss a gross negligence claim involving similar allegations as those here in Henderson v. Huling, No. 4:16cv166, 2017 WL 4209761, 2017 U.S. Dist. LEXIS 153215 (E.D. Va. Sept. 19, 2017). The plaintiff in Henderson claimed police officers threw him to the ground, beat him, and used a taser on him. Id. at *5. The plaintiff conceded that the officers called for an ambulance before taking the plaintiff to jail. Id. The Henderson court ruled there could be no gross negligence by the police officers because they requested an ambulance to treat the plaintiff after arresting him. Id. at *12. Here, Defendants asked the EMTs on scene to check on Withers just as in Henderson. Accordingly, for the reasons stated by the Henderson Court, there can be no gross negligence claim against Defendants as a matter of law.



629.0406\NHS
4890-9627-1872 .v1

## CONCLUSION

For the foregoing reasons, no reasonable juror could find in favor of the plaintiff based on the undisputed facts in this case. Accordingly, Defendants Sam Green and Dwayne Wade, by counsel, respectfully request entry of an Order granting their Motion for Summary Judgment, striking this case from the active docket of this Court, and granting such further relief as the Court deems just and proper.

Respectfully submitted,

SAM GREEN
DWAYNE WADE


/s/
Nathan H. Schnetzler (VSB No. 86437)
FRITH ANDERSON + PEAKE, P.C.
29 Franklin Road, SW
P.O. Box 1240
Roanoke, Virginia 24006-1240
Phone:      (540) 772-4600
Fax:        (540) 772-9167
Email:      nschnetzler@faplawfirm.com
*Counsel for Sam Green and Dwayne Wade*



629.0406\NHS
4890-9627-1872 .v1

**CERTIFICATE OF SERVICE**

      I hereby certify that on November 4, 2021 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing to counsel of record

/s/ _____
Nathan H. Schnetzler



629.0406\NHS
4890-9627-1872 .v1