CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
12/29/2021
JULIA C. DUDLEY, CLERK
BY: s/ CARMEN AMOS
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| **CHRISTOPHER WITHERS,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**SAM GREEN, ET AL.,** )<br>)<br>**Defendants.** ) | Case No.: 6:20-cv-65 |

### MEMORANDUM OPINION[1]

Plaintiff, Christopher Withers ("Withers"), filed this action which arises from his arrest at the hands of Defendants, Sam Green ("Green") and Dwayne Wade ("Wade"), deputy sheriffs with Campbell County. Withers asserted a claim under 42 U.S.C. § 1983 for excessive force (Count I) and also two state law claims for civil battery (Count II) and gross negligence (Count III). Defendants moved for summary judgment (Dkt. 16) on all claims which I **GRANT** as to Count III, but **DENY** as to Counts I and II.

I.   BACKGROUND

Deputy Green was on duty the evening of September 29, 2018 when he was dispatched to respond to an incident involving a vehicle hitting a house. Defs.' Summ. J. Br. ("Defs.' Br."), Green Decl. at 1; Defs.' Br., Ex. 2, Attach. A at 02:00–02:30; Defs.' Br., Ex. 2, Attach. B at 0:00–01:25. Deputy Green activated his emergency lights and siren and was driving along Camp Hydaway Road when he came upon Withers driving in the same direction. Defs.' Br., Ex. 2, Attach. A at 9:00–9:29; Defs.' Br., Ex. 1, Withers Dep. ("Withers Dep."), 19:3–7. Withers failed to pull over to allow Deputy Green to proceed to the emergency. Withers Dep., 19:1. Rather, Withers continued on Camp

---

[1] This case is before me by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

Hydaway Road for approximately four minutes without yielding the way for Deputy Green. Defs.' Br., Ex. 2, Attach. A at 09:00–12:45. Eventually, Withers turned on his right signal and turned onto Old Rustburg Road – the same route Deputy Green also intended to take. Id. at 12:45–12:56; Withers Dep., 19:14–25. Withers continued on Old Rustburg Road for approximately another minute before coming upon a fire truck blocking the road. Defs.' Br., Ex. 2, Attach. A at 12:31; Defs.' Br., Ex. 2, Attach. B at 03:42–03:46; Defs.' Br., Ex. 2, Attach. C. By this time, dispatch had advised Deputy Green to discontinue his response to the emergency as the Virginia State Police had responded to that call. Deputy Green then turned his attention to Withers and his failure to yield as Deputy Green responded to the emergency call. Defs.' Br., Ex. 2, Attach. A at 11:00–11:10; Defs.' Br., Ex. 2, Attach. B at 02:50–02:58. The above facts are undisputed.[2]

The evidence sharply conflicts at this point.[3] Defendants' evidence shows that Deputy Green immediately exited his vehicle and approached Withers's car yelling for him to show his hands. Defs.' Br., Ex. 2, Attach. A at 13:37–13:43. Deputy Green had safety concerns because Withers had failed to yield to Deputy Green when he had his emergency equipment activated and because as Deputy Green approached the vehicle, he could not see Withers's hands. In fact, Deputy Green believed that Withers was reaching for the back of the console or floorboard area. Id. at 13:43. Deputy Wade arrived at the scene to assist as Deputy Green stopped behind Withers. Both deputies approached the

---

[2] Ultimately, Withers entered a guilty plea for misdemeanor eluding.
[3] I consider the facts at the summary judgment stage in the light most favorable to Withers as the non-moving party. Glynn v. EDO Corp., 710 F.3d 209, 213 (4th Cir. 2013) (citing Bonds v. Leavitt, 629 F.3d 369, 380 (4th Cir. 2011). I have carefully reviewed the depositions submitted, declarations, photographs, dash camera video and audio offered by the parties.

left side of Withers's vehicle together, opened the driver's door and grabbed Withers's arm to pull him from the car. Id.

The dash camera video from Deputy Green's vehicle shows that Deputy Green opened the driver's door and as Withers pulled away toward the interior of the car, Deputy Green used an "elbow to the sky" control hold to grab Withers by the left arm to prevent him from pulling away. Defs.' Br., Ex. 2, Attach. A at 13:45–13:50; Defs.' Br., Ex. 3, Wade Decl. at 2; Withers Dep., 21:8–10. Deputy Wade grabbed Withers's other arm, and both deputies pulled Withers from the vehicle with sufficient force that the momentum of both deputies and Withers carried them outside the view of Deputy Green's dash camera video and onto the grassy area next to the road. Defs.' Br., Ex. 2, Attach. A at 13:47–13:50; Defs.' Br., Wade Decl. at 2–3. Approximately one minute passed in which Withers and Deputies Green and Wade are off the video captured by Deputy Green's dash camera. Deputies Green and Wade contend that they fell to the ground with Withers who remained noncompliant by trying to pull and roll away from them. Defs.' Br., Green Decl. at 4. The defendant deputies used a "key lock" maneuver to control Withers's arms so they could handcuff him and take him into custody. Defs.' Br., Wade Decl. at 3. They deny punching, kicking, elbowing, or otherwise abusing Withers during the arrest. Defs.' Br., Green Decl. at 4–5; Wade Decl. at 3; Engel Decl. at 2; Spitzer Decl. at 2.

The evidence from Withers shows that Deputies Green and Wade "yanked" him out of his car. Withers testified that the defendant deputies dragged him to the edge of bushes and proceeded to beat and injure him. Withers Dep., 20:5–22. Withers claims that the defendant deputies slammed him on the ground and then handcuffed him while

3

punching him on the right side and in the stomach, and ribs. Id., 20:23–25; 21:1–6. Withers testified that the officers repeatedly told him to "stop resisting" while trying to handcuff him. Id., 24:12–24. Withers contends that he did not resist arrest and stated "Sir, I'm not resisting." Id., 20:5–13; 21:18–21.

Approximately one minute of the video footage has Deputies Green and Wade off camera with Withers after removing him from the vehicle. When Withers along with the defendant deputies returns to the camera, Withers is handcuffed and has a bloodied face. Withers contends that he sustained injuries during this time including contusions, damaged neck ligaments, facial lacerations, pain, and suffering. Id., 25:22–26:1; 39–41.

A Rustburg Volunteer Fire Department firefighter, Isaiah Engel ("Engel"), was nearby the officers during the traffic stop and arrest. Defs.' Br., Engel Decl. at 2. Engel followed the three men off camera during the disputed arrest. Defs.' Br., Ex. 2, Attach. A at 13:48–13:55. Another Rustburg firefighter, Eric Spitzer ("Spitzer"), was in the firetruck and observed the defendant deputies pull Withers from the car but did not see when Withers was taken to the ground. Defs.' Br., Spitzer Decl. at 1. Engel and Spitzer both state that they "did not observe the deputies punch, kick, or otherwise abuse the driver." Id; Defs.' Br., Engel Decl. at 2.

An EMT on the scene checked on Withers and cleaned his bloodied face. Defs.' Br., Ex. 2, Attach. A at 15:30–15:35. Withers refused further medical care at the scene and again while in transport to the Sheriff's Office. Defs.' Br., Ex. 6; Withers Dep., 21:11–17; 25:9–18; 26:3–4, Before appearing before the magistrate judge via television. Deputy Green used his flashlight and finger for Withers to follow the light with his eyes.

Withers Dep., 26:25; 27:1–5. For a third time, Withers refused medical care, this time offered by Deputy Green. Id., 27:10–15.

After Withers was released from custody, he immediately went to the Lynchburg General Hospital emergency room with his wife. Id., 28:15–22; 55:7–25; 56:1–11. A forensic nurse examined and took X-rays of Withers and prescribed him medicine. Id., 35:8–25. The forensic nurse also took photographs of Withers's face and body which showed signs of the injuries that Withers suffered to his face, but no visible marks on his body. Id., 42:1–9; Defs.' Br., Ex. 7. There are grass and dirt stains on the knee area of Withers's jeans. Defs.' Br., Ex. 7 at 32–37.

## II. STANDARD OF REVIEW

The court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" Libertarian Party of Va. v. Judd, 718 F.3d 308, 313 (4th Cir. 2013) (quoting Dulaney v. Packaging Corp. of Am., 673 F.3d 323, 330 (4th Cir. 2012)). A fact is material if it might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. at 242, 248 (1986). In determining whether a genuine dispute of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party. Tolan v. Cotton, 572 U.S. 650, 657 (2014).

III. ANALYSIS

### A. Count I - Excessive Force

To survive summary judgment, Withers must provide sufficient evidence from which a reasonable jury could find that the actions of the defendant deputies were not objectively reasonable and thus constitute excessive force under 42 U.S.C. § 1983 in violation of the Fourth and Fourteenth Amendment. Withers asserts that Deputies Green and Wade used unreasonable and excessive force after removing him from the vehicle and while taking him into custody. The Fourth Amendment prohibits law enforcement from using excessive force while making an arrest. Graham v. Connor, 490 U.S. 386, 395 (1989). Whether the force used during an arrest was excessive turns on an "objective reasonableness" standard. Wilson v. Prince George's Cnty., 893 F.3d 213, 219 (4th Cir. June 18, 2018). Under this standard, the Court should consider "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight." Id. at 220.

Whether the officer's actions are reasonable must be viewed "in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation." Graham, 490 U.S. at 397. Essentially, "the Court must determine 'whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force[.]" Smith v. Centra Health, Inc., No. 6:20-cv-16, 2021 U.S. Dist. LEXIS 63080, at *29 (W.D. Va. Mar. 31, 2021). In recognition of the fact that "officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving," Graham, 490 U.S. at 397, the officer's actions

6

are not judged with the benefit of 20/20 hindsight or armchair reflection. Cnty. of Los Angeles v. Mendez, 137 S. Ct. 1539, 1546 (2017).

The video evidence captured from Deputy Green's dash camera shows the defendant deputies removing Withers from the vehicle with such force that they are carried out of the picture view of the camera. The evidence is in dispute whether Withers resisted or failed to follow the directives of Deputies Green and Wade or whether the defendant deputies struck Withers with such force as to cause the injuries seen on the video and captured on the pictures taken by the forensic nurse. A reasonable jury could conclude that the video evidence corroborates the testimony of Withers and return a verdict in his favor. Defendants' motion for summary judgment as to Count I is denied.

### B. Count II - Battery

Withers asserts a claim of battery against the defendant deputies in Count II. Battery is an intentional tort which consists of a willful and unwanted touching which is neither consented to, excused, nor justified. Va. Code § 18.2-57; Koffman v. Garnett, 265 Va. 12, 16, 574 S.E.2d 258, 261 (2003). No doubt, the defendant deputies had probable cause to stop Withers and to charge him for his failure to yield the way for Deputy Green. However, for the same reasons a jury should determine the excessive force claim, the issues related to battery are properly reserved for the jury. A factual dispute exists whether the interaction between Withers and the defendant deputies constitutes battery. Certainly, it is necessary for law enforcement to touch individuals during an arrest, so an officer does not commit a battery when he touches someone appropriately, such as without excessive force, to make an arrest. Gnadt v. Commonwealth, 27 Va. App. 148, 151, 497 S.E.2d 887, 888 (1998). Thus, summary judgment as to Count II is denied since

there is a genuine dispute of material fact over whether the alleged unwanted touching after the car extraction was justified.

### C. Gross Negligence

Withers asserts in Count III a gross negligence claim contending that Defendants had a "legal duty to use ordinary care to protect Withers from harm" when they "used more force than necessary to arrest, beat, and injure him without cause or justification."[4] Further, Withers contends in his Complaint that the Defendants "acted with conscious and utter disregard to Withers' rights or welfare." Compl. ¶¶ 32-34. Withers at this stage must adduce sufficient evidence from which a reasonable jury could conclude that the defendant deputies acted with gross negligence in violation of some legal duty owed to Withers. He has failed to do so, and thus, the Defendants' summary judgment motion is granted for Count III.

Under Virginia law, "gross negligence is that degree of negligence which shows indifference to others as constitutes an utter disregard of prudence amounting to a complete neglect of the safety of another." Elliott v. Carter, 292 Va. 618, 791 S.E.2d 730, 732 (2016) (quoting Cowan v. Hospice Support Care, Inc., 268 Va. 482, 603 S.E.2d 916, 918 (2004)). It must be such a degree of negligence as would shock fair-minded men although something less than willful recklessness. Griffin v. Shively, 227 Va. 317, 320, 315 S.E.2d 210, 212 (1984). Plaintiffs face a steep hurdle when claiming a defendant's actions amounted to gross negligence. Doe v. Russell Cnty. Sch. Bd., 292 F. Supp. 3d 690, 716 (W.D. Va. 2018).

---

[4] It is not clear to the court whether Withers is proceeding only on the gross negligence claim versus the additional willful, wanton, and reckless negligence alleged in the Complaint (Dkt. 1 at 5). I presume that Withers is solely proceeding with the gross negligence claim as he only comments on gross negligence standards and arguments in the Memorandum in Opposition (Dkt. 19) and during the oral arguments on December 1, 2021 (Dkt. 18).

Withers asserts that the gross negligence claim is rooted in the duty of the defendant deputies to protect him from injury. But the duty to protect which Withers tries to advance is generally a duty to prevent injury to a specific person by a third party. A law enforcement officer has such duty only when a special relationship exists as to a specific, identifiable person or class of persons. See Burdette v. Marks, 244 Va. 309, 312, 421 S.E.2d 419, 421 (1992). In this case, Withers asserts the breach of a direct duty by the defendant deputies not to injure him and not the violation of a duty arising through any special relationship. Essentially, Withers failed to produce evidence that the deputies failed to protect him from third-party harm, and instead alleges a breach based on the deputies' personal actions which directly caused his claimed injuries. Thus, I find that Withers has failed to carry his burden of establishing a triable issue in Count III and grant summary judgment on that claim.

IV.   CONCLUSION

Accordingly, I **GRANT** Defendants' motion for summary judgment for the gross negligence claim, dismissing the claim with prejudice, and I **DENY** the motion for summary judgment as to the excessive force and civil battery claims. The case will proceed to trial and an appropriate order accompanies this memorandum opinion.

Entered:  December 29, 2021

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge